UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION


IN RE: PAYMENT CARD INTERCHANGE FEE AND
MERCHANT DISCOUNT ANTITRUST LITIGATION

|  |  |  |
|---|---|---|
| Target Corporation, et al. v. Visa Inc., et al., | ) | |
|     S.D. New York, C.A. No. 1:13-03477 | ) | MDL No. 1720 |
| 7-Eleven, Inc., et al. v. Visa Inc., et al., | ) | |
|     S.D. New York, C.A. No. 1:13-04442 | ) | |


### TRANSFER ORDER

**Before the Panel:**[*] Pursuant to Panel Rule 7.1, plaintiffs in two actions move to vacate our orders that conditionally transferred their respective actions to the Eastern District of New York for inclusion in MDL No. 1720.[1] Defendants Visa Inc., Visa U.S.A. Inc., and Visa International Service Association (collectively, "Visa") and MasterCard Incorporated and MasterCard International Incorporated (collectively, "MasterCard") oppose the motions to vacate. The actions in MDL No. 1720 involve allegations that Visa and MasterCard engaged in anticompetitive conduct with respect to interchange fees imposed on credit and debit card transactions and rules governing merchants' acceptance of such payment cards.

In opposing transfer, plaintiffs acknowledge that their actions raise common questions of fact and law, but argue that transfer is not appropriate for several reasons, none of which we ultimately find persuasive. First, they argue that pretrial proceedings are nearly done, with common discovery completed long ago and a proposed class settlement that advanced to a final approval hearing on September 12, 2013. Settlement approval proceedings, however, are ongoing, and if the settlement is not granted final approval, substantial pretrial proceedings will remain. Furthermore, 15 new actions filed by plaintiffs who opted out of the proposed settlement are pending in MDL No. 1720,

---

[*] More than three Panel members have interests that would normally disqualify them under 28 U.S.C. § 455 from participating in the decision of this matter. Accordingly, the Panel invoked the Rule of Necessity and all Panel members present at the September 2013 hearing participated in the decision of this matter in order to provide the forum created by the governing statute, 28 U.S.C. § 1407. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig. (No. II)*, 273 F. Supp. 2d 1353 (J.P.M.L. 2003); *In re Wireless Telephone Radio Frequency Emissions Prods. Liability Litig.*, 170 F. Supp. 2d 1356 (J.P.M.L. 2001). Judge Sarah S. Vance, who was not present, did not participate in the decision of this matter.

[1] Plaintiffs in the *Target* and *7-Eleven* actions consist of some 200 merchants and their corporate affiliates. Due to the large number of plaintiffs, they are not listed individually in this order. A full listing of plaintiffs in those actions is in MDL No. 1720, Docs. No. 127 and 174.

-2-

and the factual and legal issues raised by those actions – as well as their procedural posture – are virtually identical to movants' actions.

Second, plaintiffs contend that transfer would violate their due process rights as set forth by the Supreme Court in *Wal-Mart v. Dukes*[2] and, in particular, their right under Fed. R. Civ. P. 23(b)(3) to opt out of the monetary component of the proposed class action settlement. They argue that, because they are absent class members who have not been involved in the MDL, transfer would defeat their opt-out decisions by forcing them into the class action proceedings and placing them on an uneven playing field with defendants. As defendants aptly point out, *Wal-Mart v. Dukes* does not address transfer of an opt-out action to an MDL, but rather held that due process requires that plaintiffs be provided notice and an opportunity to opt-out of a money damages class. Thus, the Panel finds plaintiffs' due process arguments wholly unavailing. The *Target* and *7-Eleven* plaintiffs were provided the opportunity to opt out of the proposed monetary settlement class in MDL No. 1720, and in fact, did so.[3] We also are not persuaded by plaintiffs' argument that transfer will unfairly burden them with the transferee court's prior rulings. Any objections to specific rulings being applied to them (which they have not identified) can be argued to the transferee court.[4]

Third, plaintiffs in the *7-Eleven* action contend that the transferee court's alleged participation in *ex parte* settlement discussions would prejudice their rights to due process and fairness because the class plaintiffs allegedly overstated the merchants' litigation risk and defendants likely received the benefit of the court's candid opinions on the claims and defenses in the case. The Panel, of course, would not act on a recusal motion or conduct appellate review of pretrial proceedings in an

---

[2] 131 S. Ct. 2541 (2011).

[3] The Panel recently rejected similar due process arguments made by opt-out plaintiffs objecting to transfer of their actions to a transferee court they considered undesirable. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* ("*Deepwater Horizon*"), MDL No. 2179, Doc. No. 1077, Transfer Order at 1-2 (June 8, 2012) ("[P]laintiffs' contention that transfer would deprive them of their constitutional rights to due process and equal protection is unsupported by any authority. To the extent that the contention is grounded in dissatisfaction with the proposed partial settlement reached in the MDL, plaintiffs are under no obligation to participate in that settlement."); *see also Deepwater Horizon*, Doc. No. 1561, Transfer Order at 3 (Aug. 9, 2013) (rejecting due process arguments of plaintiffs in 42 additional actions).

[4] The Panel has long recognized that transfer of opt-out actions to the MDL addressing the proposed class settlement is desirable because of the efficiencies from the transferee court's management of overlapping actions, integration of existing discovery with discovery in the new actions, and the court's expertise in the issues. *See, e.g., In re Pennsylvania Life Co. Secs. Litig.*, 436 F. Supp. 406 (J.P.M.L. 1977) (transferring five actions filed by plaintiffs "who had opted out of the [settlement] class," based on, *inter alia,* other opt-out actions before the transferee judge, his ability to "integrate discovery proceedings," and his "familiarity with the issues involved").

-3-

MDL,[5] and ultimately the *7-Eleven* plaintiffs concede that their motion does not make such a request of us. In any event, these plaintiffs have failed to demonstrate that any aspect of the alleged settlement discussions provide a basis for denying transfer.

Lastly, plaintiffs ask the Panel, in the alternative, to create a new MDL to handle the opt-out actions, which now total 18, and transfer those actions to the Southern District of New York, where the *Target* and *7-Eleven* actions were filed. MDL No. 1720 already includes 15 opt-out actions, which raise substantially the same factual allegations and legal claims as the actions originally centralized in the MDL and covers the same damages period. Given that procedural status, it makes no sense to create a new MDL in another district. Additionally, the transferee court in MDL No. 1720 is clearly in the best position to streamline discovery and motions practice in the opt-out actions with the discovery and motions practice that have been completed.

After considering all argument of counsel, we find these actions involve common questions of fact with the actions previously transferred to MDL No. 1720, and that transfer will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation. Moreover, transfer is warranted for the reasons set out in our order directing centralization. In that order, we held that the Eastern District of New York was an appropriate Section 1407 forum for actions arising out of allegations that "that the imposition of a no-surcharge rule and/or the establishment of the interchange fee causes the merchant discount fee to be set at supracompetitive levels in violation of the federal antitrust laws." *See In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 398 F. Supp. 2d 1356, 1358 (J.P.M.L. 2005). These actions involve substantially the same factual allegations, and thus fall squarely within the subject matter of the MDL.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, these actions are transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable John Gleeson for inclusion in the coordinated or consolidated pretrial proceedings.

---

[5] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010 (No. II)*, MDL No. 2457, 2013 WL 4048480, at *2 (J.P.M.L. Aug. 9, 2013) ("The Panel does not aspire to the role of an appellate court for disaffected MDL litigants. We are neither authorized by statute nor inclined to act in such a role."); *In re Sundstrand Data Control, Inc. Patent Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L.1978) ("[T]he Panel has neither the power nor the inclination to dictate in any way the manner in which the coordinated or consolidated pretrial proceedings are to be conducted by the transferee judge.").

-4-

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

Kathryn H. Vratil        Paul J. Barbadoro
Marjorie O. Rendell      Charles R. Breyer
Lewis A. Kaplan